FILED IN CHAMBERS
U.S.D.C. Atlanta

FEB 1 9 2008

JAMES N. HATTEN, Clerk

By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNDERWRITERS INSURANCE COMPANY,

        Plaintiff,

v.

ATLANTA GAS LIGHT COMPANY, and
GENERAL PIPELINE COMPANY,

        Defendants.

CIVIL ACTION FILE NO.

1:03-CV-0121-JEC

## O R D E R  &  O P I N I O N

This case is presently before the Court on defendant Atlanta Gas Light Company's Renewed Motion to Compel Production of Documents [109] and Underwriters Insurance Company's Request for Guidance from the Court [132]. For the following reasons, the Court concludes that Atlanta Gas Light Company's Renewed Motion to Compel Documents [109] should be **GRANTED IN PART and DENIED IN PART** and Underwriters' Request for Guidance from the Court [132] should be **DENIED**.

### BACKGROUND

This dispute arises out of a tort claim filed by Tina Henry against defendants Atlanta Gas Light Company ("AGLC") and General Pipeline Company ("GP") for a house fire that led to the death of two residents of a home in which AGLC and GP had been doing work. (Order

[126] at 1.)  Ms. Henry filed suit against AGLC and GP, alleging that both had acted negligently.  (*Id.*)  Plaintiff Underwriters Insurance Company ("Underwriters") provided insurance that covered GP's work on the Henry home.   (*Id.*)   AGLC was purportedly covered as an "additional insured" on GP's policy.  (*Id.*)

Underwriters provided a defense to both AGLC and GP in the Henry litigation.  (*Id.* at 1-2.)  At some point during the litigation, however, Underwriters began to question whether AGLC qualified as an "additional insured" under the GP policy.   (Order [126] at 2.) Underwriters continued to defend AGLC, but reserved its right to deny coverage.  (*Id.*)  Following mediation, AGLC and Underwriters agreed to settle the Henry claim.  (*Id.*)  Both parties contributed to the settlement, but each party reserved the right in the settlement agreement to seek reimbursement from the other.  (*Id.*)

Underwriters subsequently filed this action, seeking a ruling that it was not obliged, under the terms of the GP policy, to indemnify, cover or defend AGLC in the Henry litigation.  (*Id.* at 2.) AGLC brought a counterclaim against Underwriters seeking full reimbursement, as well as attorney's fees and damages, for Underwriters' allegedly bad faith refusal to pay the entire amount of the settlement assessed against AGLC.  (Order [126] at 2.)  The Court granted summary judgment to AGLC on its counterclaim, finding that AGLC qualified as an "additional insured" under the GP policy.  (*Id.*

2

at 3.)  Following the Court's summary judgment order, the only claim left to be decided was AGLC's bad faith claim against Underwriters. (*Id.*)

The present motions involve a discovery dispute related to AGLC's bad faith claim.  During discovery, AGLC requested all of the documents in Underwriters' claim file related to the Henry litigation and the dispute concerning coverage of AGLC as an "additional insured."  (AGLC's Renewed Mot. to Compel [109] at 2.)  Underwriters refused to produce the documents, asserting various privileges and protections.  (*Id.*)  AGLC filed a motion to compel production of the documents on Underwriters' privilege log.  (*Id.*)  Underwriters continued to resist disclosure, arguing that the documents were protected by the work product doctrine and the attorney-client privilege.  (Underwriters' Response to AGLC's Mot. to Compel [114] at 2.)

In its previous order, the Court noted that the parties had raised numerous complicated and novel questions concerning the scope of the work product doctrine and the attorney-client privilege. (Order [126] at 7.)  To simplify the issues, the Court granted AGLC's invitation to perform an *in camera* review of the documents in Underwriters' claim file.  (*Id.*)  The Court explained that it would determine: 1) which documents are relevant to AGLC's bad faith claim; and 2) whether those documents are privileged.  (*Id.*)  To aid in that

3

process, the Court ordered Underwriters to provide the Court all of the documents remaining on its privilege log and its position regarding denial of coverage. (*Id.* at 8). The Court also ordered AGLC to apprise the Court of what types of documents might be relevant to showing bad faith under Georgia law. (*Id.* at 12).

Both parties have complied with the Court's Order, and the Court has completed its *in camera* review of the documents in Underwriters' claim file. Although there are no documents in the file that directly demonstrate bad faith, the Court has identified a small number of documents that are potentially relevant to AGLC's bad faith claim and should be produced.

**DISCUSSION**

**I.   Underwriters' Request for Guidance**

As an initial matter, the Court addresses Underwriters' request for guidance concerning whether additional briefing is necessary. (Underwriters' Req. for Guidance [132].) As noted, the Court previously ordered AGLC to apprise the Court of the types of documents that might be relevant to showing bad faith. (Order [126] at 12.) AGLC's Memorandum Regarding the Court's In Camera Review of Documents on Plaintiffs' Privilege Log ("AGLC's Memorandum") [127] satisfied that order. But Underwriters asserts that AGLC's Memorandum went beyond the scope of the Court's request by reiterating and expanding upon positions argued in its Renewed Motion

4

to Compel [109] and Reply in Support of its Renewed Motion to Compel [120].  (Underwriters' Req. for Guidance [132] at 1-2).  Underwriters requests guidance from the Court concerning whether it should submit additional briefing to address the new arguments raised by AGLC. (*Id.*)

While the Court has found AGLC's list of potentially relevant documents useful, it has declined to adopt AGLC's suggested analytical approach for the *in camera* review and has not considered any new legal arguments in AGLC's Memorandum.  Because additional briefing by Underwriters will not be necessary, Underwriters' Request for Guidance is **DENIED**.

## II.   AGLC's Motion to Compel

### A.   Relevance

Under O.C.G.A. § 33-4-6, an insurer that refuses coverage of a claim in bad faith is liable for a penalty and attorneys' fees. O.C.G.A. § 33-4-6.  Bad faith is defined as a "'frivolous and unfounded denial of liability.'"  *Russell v. Dairyland Ins. Co.* 580 F. Supp. 726, 730-731 (N.D. Ga.1984) (quoting *State Farm Mut. Auto. Ins. Co. v. Harper,* 125 Ga. App. 696, 188 S.E. 2d 813 (1972)).[1]  An

---

[1].  Bad faith can also be shown by an insurer's conduct while handling a claim.  *See Georgia Farm Bureau Mut. Ins. Co. v. Jackson,* 240 Ga. App. 127, 130, 522 S.E. 2d 716, 719-20 (1999) (finding bad faith where the insurer did not take its position that there was a "doubtful question" of law until 14 months after the initial claim was made).

AO 72A
(Rev.8/82)

insurer is not liable for bad faith when it has "reasonable grounds to contest [a] claim." *Roland v. Georgia Farm Bureau Mut. Ins. Co.,* 265 Ga. 776, 777, 462 S.E. 2d 623, 625 (1995). Reasonable grounds exist where there is a "doubtful question of law" or a "disputed question of fact." *Fed. Ins. Co. v. Nat'l Distrib. Co., Inc.,* 203 Ga. App. 763, 769, 417 S.E. 2d 671, 676 (1992).

Here, AGLC contends that Underwriters' conduct amounted to bad faith because Underwriters: (1) decided to disclaim coverage based on its financial interests rather than any reasoned coverage analysis; and (2) misrepresented and failed to share information with AGLC in the course of handling AGLC's claim.[2] (AGLC's Mem. [127] at 12). Based on the Georgia standard for bad faith, and AGLC's theory of bad faith in this case, the Court finds that the following documents are relevant to AGLC's bad faith claim:

---

[2] AGLC also claims that Underwriters failed to negotiate in good faith with AGLC to resolve the coverage claim after this Court entered summary judgment in AGLC's favor on liability. (AGLC's Mem. [127] at 12.) The Court entered summary judgment for AGLC on March 29, 2005. (Order [82].) The most recent documents that are now before the Court were created in June, 2003. Thus, none of the documents are relevant to AGLC's claim based on Underwriters' post-summary judgment behavior.

| Document Number | Asserted Privilege |
|---|---|
| UIC00102-103 | Work Product and Attorney-Client Privilege |
| UIC002052-2064 | Work Product and Attorney-Client Privilege |
| UIC002072-2074 | Work Product and Attorney-Client Privilege |
| UIC000366 | Work Product |
| UIC000624-625 | Work Product |
| UIC000622-623 | Work Product |
| UIC000644-645 | Work Product |
| UIC000647 | Work Product |
| UIC000649 | Work Product |
| UIC000777 | Work Product |

**B.    Privileges**

1.    Work Product

Underwriters contends that all of the above documents are protected from disclosure by the work product doctrine.  In this diversity action, the scope of the work product doctrine is determined by Rule 26(b)(3) of the Federal Rules of Civil Procedure.  *See Shipes v. BIC Corp.* 154 F.R.D. 301, 305 (M.D. Ga. 1994) (whereas *privileges* are substantive issues determined by state law, work product doctrine is not a substantive privilege).  Rule 26(b)(3)

7

provides that:

> Ordinarily, a party may not discover documents and
> tangible things that are prepared in anticipation of
> litigation or for trial by or for another party or its
> representative (including the other party's attorney,
> consultant, surety, indemnitor, insurer, or agent).  But
> . . . those materials may be discovered if: . . . the
> party shows that it has substantial need for the
> materials to prepare its case and cannot, without undue
> hardship, obtain their substantial equivalent by other
> means.  If the court orders discovery of those materials,
> it *must* protect against disclosure of the mental
> impressions, conclusions, opinions, or legal theories of
> a party's attorney or other representative concerning the
> litigation.

FED. R. CIV. P. 26(b)(3) (emphasis added).

Applying Rule 26(b)(3), the Court's first task is to determine which documents were produced "in anticipation of litigation." For documents that were produced in anticipation of litigation, the second issue is whether AGLC can show "substantial need" and an inability to obtain the materials by other means.  Even as to documents for which AGLC can show substantial need, documents containing the "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative *must*" receive additional (if not complete) protection.  FED. R. CIV. P. 26(b)(3).

### a.   In Anticipation of Litigation

Whether a document was prepared "in anticipation of litigation" depends upon whether the document "'can fairly be said to have been

8

prepared or obtained because of the prospect of litigation, . . . (and not) in the regular course of business.'" *Carver v. Allstate Ins. Co.,* 94 F.R.D. 131, 134 (D.C. Ga. 1982) (quoting 8 Wright & Miller, Federal Practice & Procedure: Civil § 2024 (1970)). As the court explained in *Carver,* claim files "straddle both ends of this definition, because it is the ordinary course of business for an insurance company to investigate a claim with an eye toward litigation." *Id.* Consequently, claim files generally do not constitute work product in the early stages of investigation, when the insurance company is primarily concerned with "'deciding whether to resist the claim, to reimburse the insured and seek subrogation . . . or to reimburse the insured and forget about the claim thereafter." *Id.* (quoting *Thomas Organ Co. v. Jadranska Slobodna Plovidba,* 54 F.R.D. 367, 373 (N.D. Ill. 1972)). Once litigation is imminent, however, the claims investigation file is maintained "in anticipation of litigation" and its contents are protected by the work product doctrine. *Id.* See *also Lett v. State Farm Fire and Cas. Co.,* 115 F.R.D. 501, 503 (N.D. Ga. 1987)(Forrester, J.)(finding that reports prepared after a claim was reassigned from a regular representative to a senior representative, due to the company's suspicion of fraud, were protected by the work product doctrine).

Although the parties make detailed arguments regarding when

AO 72A
(Rev.8/82)

Underwriters reasonably anticipated litigation against AGLC, the Court need not answer this question. Particularly where cases are closely related, courts have generally found that documents produced in anticipation of litigating one case remain protected in a subsequent cases if they were created by or for a party to the subsequent litigation. *See Fed. Trade Comm'n v. Grolier, Inc.*, 462 U.S. 19, 25 (1983) ("the literal language of the Rule protects materials prepared for *any* litigation or trial as long as they were prepared by or for a party to the subsequent litigation")(emphasis in original) and *Chem-Nuclear Sys., Inc. v. Arivec Chem., Inc.*, 978 F.Supp. 1105, 1107 (N.D. Ga. 1997) (Camp, J.)(standard applies even if "the material was prepared in anticipation of previous litigation").

Regardless of when Underwriters anticipated litigation against AGLC, litigation surrounding the Henry claim was imminent from the moment Underwriters was notified of the claim. Underwriters was first contacted about the claim by AGLC's lawyer. (Underwriters' Resp. to AGLC's Renewed Mot. to Compel [114] at Exhibit D.) AGLC's lawyer informed Underwriters that Ms. Henry had retained counsel to assert a claim against AGLC. (*Id.*) Underwriters was thus initially engaged *because* of the very prospect of litigation involving the Henry claim.

10

In addition, the Henry claim was a third party claim, seeking payment by GP and AGLC (as an insured and additionally insured respectively).  As the federal courts have generally recognized:

> [W]hen a liability insurer investigates a third party claim, the investigation is made in anticipation of claims, which, if denied, likely will lead to litigation. For this reason it is logical to conclude that, while files generated in relation to first party claims are made in the ordinary course of business and are discoverable, files generated during the investigation of third party claims are made in anticipation of litigation and are not discoverable.

*Taylor v. Temple & Cutler*, 192 F.R.D. 552, 558 (E.D. Mich. 1999) (quoting *Weitzman v. Blazing Pedals, Inc.*, 151 F.R.D. 125, 126 (D. Colo. 1993) (internal citations omitted)).  The Court thus finds that all of the documents in Underwriters' claim file were prepared "in anticipation of litigation."

### b.    Substantial Need/Undue Burden

Still, AGLC may be entitled to certain documents if it can show a "substantial need of the materials" and an inability "without undue hardship" to obtain the materials by other means.  FED. R. CIV. P. 26(b)(3).  A number of federal courts have followed the lead of the Supreme Court of Arizona in *Brown v. Superior Court*, 137 Ariz. 327, 670 P.2d 725 (1983) in finding that a claim file is so integral to proving bad faith that an insured can meet the "substantial need" burden.  *See Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d

AO 72A
(Rev.8/82)

573, 576 (9th Cir. 1992); *Dion v. Nationwide Mut. Ins. Co.*, 185 F.R.D. 288, 293 (D. Mont. 1988); and *In re Bergeson*, 112 F.R.D. 692, 697 (D. Mont. 1986).   Quoting *Brown*, the court in *In re Bergeson* observed that:

> [B]ad faith actions against an insurer, like actions by client against attorney, [or] patient against doctor, can only be proved by showing exactly how the company processed the claim, how thoroughly it was considered and why the company took the action it did.  The claims file is a unique, contemporaneously prepared history of the company's handling of the claim; in an action such as this the need for the information in the file is not only substantial, but overwhelming.

*In re Bergeson*, 112 F.R.D. at 697 (quoting *Brown*, 670 P.2d at 734).

A finding of substantial need is especially appropriate once the underlying coverage dispute has been resolved and only a bad faith claim remains.   Once the coverage dispute has been resolved, the rationale for maintaining a privilege is diminished, while the same need for information remains.  *Id.* at 692 (bifurcating the case and allowing bad-faith plaintiff access to the insurer's entire claim file following resolution of coverage dispute).   *See also Transp. Ins. Co., Inc. v. Post Express Co., Inc.*, 1996 WL 32877 at *3 (N.D. Ill. 1996) (providing access to the insurer's claim file where the insured's bad faith claim was the only issue left for trial) and *Silva v. Fire Ins. Exch.*, 112 F.R.D. 699, 699-700 (D. Mont. 1986) (ordering production of the insurer's entire claim file when only the

12

bad faith issue remained).

Underwriters notes that some federal courts have refused to follow the *Brown* approach. *See e.g. Fid. and Deposit Co. of Md. v. McCulloch,* 168 F.R.D. 516, 524 (E.D. Penn. 1996) (rejecting *Brown*) and *Ring v. Commercial Union Ins. Co.,* 159 F.R.D. 653, 658 (M.D. N.C. 1995) (stressing the weakness of plaintiff's bad faith claim and noting that plaintiff could discover facts by deposing the claims adjustor). Underwriters also cites two cases in which courts in this circuit found that an insured claiming bad faith could not establish the requisite substantial need and undue burden to access insurers' files. *See Carver,* 94 F.R.D. at 136 (finding that an insured could elicit the facts it sought by deposing the claims investigator and other witnesses) and *Lett*, 115 F.R.D. at 504 (stating that the insured had failed to explain why it was "unable to obtain all facts necessary to [its] bad faith claim through depositions"). However, Underwriters does not cite any cases in which the underlying coverage dispute has been resolved and only a bad faith claim remains. This distinction is significant. *See Ring,* 159 F.R.D. at 657 (emphasizing that the underlying coverage dispute "is both present and unresolved").

Here, the Court finds that AGLC's need is substantial. Part of AGLC's theory is that Underwriters misrepresented and failed to share

13

information in its files.  (AGLC's Memorandum [127] at 12.)  The documents in the file are the only reliable indication of whether this occurred.  Accord *Joyner v. Cont'l Ins.* Co., 101 F.R.D. 414, 416 (D.C. Ga. 1983) (noting that the claim file "take[s] on additional relevance" in a bad faith claim).  Unlike in *Lett* or *Carver*, where the insured could obtain information through depositions, in this case the accuracy of certain deposition testimony is itself at issue (for example, Mr. Parrish's deposition contradicted his interview statement).  To the extent that Underwriters' claim file contains facts that contradict deposition testimony, it would be an undue burden to require AGLC to rely only on the depositions to determine whether Underwriters misrepresented the evidence available to it. Moreover, because the underlying coverage dispute has been resolved, there is far less justification for protecting factual information in Underwriters' files.

### c.   **Mental Impressions**

Rule 26(b)(3) provides that when the Court orders discovery of materials prepared by a party in anticipation of litigation, it must protect against disclosure of the "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."  FED. R. CIV. P. 26(b)(3).

14

Whether this language provides complete immunity from discovering mental impressions of a lawyer or representative is the subject of another debate among courts.

Some courts have determined that Rule 26(b)(3) creates an absolute bar to discovering the mental impressions of an attorney or their representative. The leading case advocating this approach is *Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 509 F.2d 730, 734 (4th Cir. 1974). Relying on the plain language of Rule 26(b)(3), the *Duplan* Court held that "no showing of relevance, substantial need or undue hardship should justify compelled disclosure of an attorney's mental impressions, conclusions, opinions or legal theories." *Id.* Many courts, particularly courts in this circuit, have agreed. *See Shipes,* 154 F.R.D. at 305 ("It is questionable whether any showing justifies disclosure of an attorney's mental impressions."); *Joyner,* 101 F.R.D. at 415 (ordering that documents in the claim file be excised to remove mental impressions); and *Carver,* 94 F.R.D. at 135 ("the thoughts and mental impressions from the investigatory reports . . . are immune from discovery").

On the other hand, when mental impressions are directly at issue and the need for the material is compelling, some courts and commentators have advocated an exception to this strict rule--

15

particularly in bad-faith cases.  For example, in *Holmgren*, the Ninth Circuit found that "[u]nless the information the [insured] seeks is available elsewhere, [she] may be able to establish a compelling need for evidence in the insurer's claim file regarding the insurer's opinion of the viability and value of the claim."  *Holmgren,* 976 F.2d at 577.  Because the exhibits the insured sought were not available elsewhere, the court in *Holmgren* determined that the insured was entitled to obtain the entire claim file (mental impressions included).  *Id.*  Other courts have agreed.  *See e.g. Brown*, 137 Ariz. at 337, 670 P.2d at 735 (noting that "the strategy, theories, mental impressions and opinions of [the insurer] . . . are directly at issue").

Although the Court recognizes the rationale for the rule of *Holmgren* and *Brown*, the literal text of Rule 26(b)(3) and its interpretation by courts in this circuit suggest that the Rule provides an absolute bar to discovering the mental impressions of an attorney or representative.  Therefore, the court will permit Underwriters to redact any such "mental impressions, conclusions, opinions, or legal theories" of Underwriters' investigators or its attorneys before producing any documents in its claim file to AGLC.

The Court accordingly **GRANTS** AGLC's motion to compel [109] as to

16

documents UIC000366, UIC000622-23, UIC000624-25, UIC000644-645, UIC000647, UIC000649, and UIC000777. Underwriters may redact any mental impressions from those documents before producing them to AGLC.[3]

### 2.   Attorney-Client Privilege

The three additional documents that the Court has identified as relevant are purportedly protected by the attorney-client privilege. The scope of the attorney-client privilege is determined by Georgia law. *GAB Bus. Serv., Inc. v. Syndicate 627,* 809 F.2d 755, 762 (11th Cir. 1987)("state law determines privilege when state law supplies rule of decision"). Under Georgia law, the attorney-client privilege protects attorney-client communications that are intended to be confidential. *Bryant v. State,* 282 Ga. 631, 657 S.E. 2d 718, 725 (2007). *See also* O.C.G.A. § 24-9-24.

It is unclear why Underwriters has designated these documents as being protected by GP's attorney-client privilege. It is unlikely that Underwriters would have standing to assert GP's privileges. *See Peterson v. Baumwell,* 202 Ga. App. 283, 285, 414 S.E.2d 278 (1991) ("it is axiomatic that the privilege belongs to the client, not the

---

[3] However, any facts or information upon which Underwriters relied in forming these impressions shall not be removed.

attorney"). Third parties generally cannot insist that the attorney-client privilege be maintained. *Id.* In any case, the documents at issue contain communications between Underwriters and GP's attorneys, not between GP and its attorneys. "To the extent a communication is made for the purpose of disclosure to a third party, it is not protected by the attorney-client privilege in Georgia." *McKesson HBOC, Inc. v. Alder*, 254 Ga. App. 500, 502-03, 562 S.E. 2d 809, 813 (2002). *See also Shipes*, 154 F.R.D. at 304 ("The privilege does not apply to documents obtained by the attorney from a third party, or even documents which a party filters through its attorney").

The Court finds, however, that the documents are protected by Underwriters' attorney-client privilege. UIC000102-03 is a letter from Underwriters' senior claims examiner Barbara Bentley to attorney John Reale. The letter provides the background of the Henry claim with a view towards retaining Reale to defend GP. It is comparable to an initial discussion between an attorney and a potential client who intends to retain the attorney. Georgia's privilege covers communications made "pending [an attorney's] employment or in anticipation thereof." O.C.G.A. § 24-9-24. UIC000102-03 is thus privileged under Georgia law.

The remaining two documents, UIC0002052-2064 and UIC0002072-74, are reports from Reale updating Bentley on his progress on the case

and providing recommendations for handling the case.  These reports were written after Underwriters retained Reale to defend GP, and are related to Reale's representation of GP.  Underwriters retained Reale in order to: 1) comply with its contractual obligation to defend GP in the Henry litigation; and 2) minimize the damage for which Underwriters was primarily responsible under GP's insurance policy. Under the circumstances, the Court finds that Underwriters had an attorney-client relationship with Reale.  *See Newberry v. Cotton States Mut. Ins. Co.*, 242 Ga. App. 784, 785, 531 S.E. 2d 362, 363 (2000)("The basic question in regard to the formation of the attorney-client relationship is whether . . . advice or assistance of the attorney is both sought and received in a matter pertinent to his profession."); *Garrett v. Fleet Fin., Inc. of Georgia*, 252 Ga. App. 47, 52, 556 S.E. 2d 140, 145 (2001)(noting that the payment of a fee is commonly the test of employment); and *Nationwide Mut. Fire Ins. Co. v. Bourlon,* 172 N.C. App. 595, 617 S.E. 2d 40 (2005)(concluding that a tripartite attorney-client relationship existed whereby the lawyer hired to defend an insured represented both the insurer and the insured).  Reale's communications to Bentley are thus privileged under Georgia law.

In addition, UIC0002052-54, and UIC0002072-74 are both protected by the work product doctrine discussed above.  In contrast to the

AO 72A
(Rev.8/82)

documents that the Court has ordered Underwriters to redact and produce, however, UIC0002052-54 and UIC0002072-74 consist almost entirely of the mental impressions of the attorney that Underwriters retained to hire GP.   The sole purpose of these documents was to advise Underwriters' senior claims examiner about the attorneys' evaluation of the case and strategy moving forward.   Thus, these documents cannot be meaningfully redacted to remove the material that is completely barred from disclosure by Rule 26(b)(3).

Accordingly, the Court **DENIES** AGLC's motion to compel as to documents UIC000102-103, UIC0002052-64, and UIC0002072-74.   These documents are protected by Underwriters' attorney-client privilege and by the work product doctrine.

### III.  AGLC's New Contentions

To ease the Court's burden and pursuant to an agreement with AGLC, both Underwriters and GP produced certain purportedly privileged documents directly to AGLC rather than the Court. (Underwriters' Opp'n to AGLC's Req. for Leave to File Supplemental Reply [134] at 3.)  Among the new production are two documents ("the Parrish documents") describing statements of Mr. Parrish.  The first document (UIC000728) is a note from Ms. Bentley's activity log which describes her conversation with Dennis Tingle (Operations Manager at GP); the second document (UIC000742) is a letter from Lawson Thompson

(loss adjuster engaged by Underwriters) chronicling Mr. Parrish's recorded statements.  Both documents refer to statements by Mr. Parrish that he lit the pilot lights at the Henry home.

Based on the Parrish documents, AGLC asserts that Underwriters has committed fraud, either because:  (1) the Parrish documents were impermissibly withheld under the work-product doctrine from April 2000 when they were created until October 2006 when they were produced; or (2) Underwriters misrepresented the contents of this "evidence" throughout the litigation.  (AGLC's Supplemental Reply in Supp. of Renewed Mot. to Compel [133] at 3, 6).  If fraud has occurred for either reason, AGLC suggests that two consequences should follow.  First, AGLC argues that the crime-fraud exception to the work product doctrine should apply.  (*Id.* at 11-14).  If so, AGLC would be entitled to discover any documents related to Underwriters' fraud (mental impressions included).  *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1422 (11th Cir. 1994).  Second, AGLC argues that Underwriters' fraud merits sanctions.  (*Id.* at 14-15).

The Court concludes that Underwriters did not commit fraud by withholding the Parrish documents under the work-product doctrine. Under Georgia law, fraud requires "a false representation or omission of a material fact."  *See ReMax N. Atlanta v. Clark*, 244 Ga. App. 890, 893, 537 S.E. 2d 138, 141 (2000)(finding that home seller's

21

failure to disclose defects constituted omission of material fact).
Underwriters' reasonable (albeit mistaken) assertion that the work-
product doctrine protected the Parrish documents from discovery did
not constitute an omission of a material fact. Although the Court
has determined that the Parrish documents would not have been
protected from discovery, the Court's lengthy analysis (including a
determination of previously unresolved issues in this Circuit)
suggests that reasonable minds could have disagreed as to the
protected status of the documents.   Furthermore, it was AGLC's
burden to show either a substantial need for the documents or that an
exception to the work-product doctrine applied.   The fact that AGLC
met these burdens does not suggest that Underwriters acted
fraudulently by claiming that the doctrine applied in the first
place.

AGLC also asserts that Underwriters acted fraudulently by
repeatedly asserting that there was "no evidence" that any GP
employee had relit the Henry furnace or entered the Henry home
despite possessing the Parrish documents. (AGLC's Supplemental Reply
[133] at 6-11). For example, Underwriters stated as an undisputed
material fact: "There is no evidence that a General Pipeline employee
ever entered the Henry residence . . . ." (Underwriters' Statement
of Undisputed Material Facts [28] at 21). Underwriters then argued

22

that there was "no evidence" that the Henry fire had arisen out of GP's work. (Underwriters' Br. in Supp. of its Mot. for Summ. J. [28] at 3, 12).

While Underwriters' conduct was more questionable in this regard, the Court still concludes that its actions did not constitute fraud. Again, under Georgia law, fraud requires "a false representation or omission of a material fact." *ReMax N. Atlanta,* 244 Ga. App. at 893. The Parrish documents, which Underwriters possessed, clearly contained *information* that GP employees had lit the Henry's pilot lights and entered the Henry home. But *information* and *evidence* are not synonymous. The issue is whether Underwriters' "no *evidence*" assertions constituted false representations.

Whether Underwriters made false representations turns on Underwriters' use of the word "evidence." Underwriters has argued that the Parrish documents were protected from discovery and constituted inadmissible hearsay. Therefore, the Court charitably presumes Underwriters to have used the term "evidence" to mean "discoverable evidence" or "admissible evidence" or both. According to Black's Law Dictionary, three of the four definitions of "evidence" arguably refer to admissible and/or discoverable

23

information.[4] As such, the Court concludes that Underwriters' use of

the phrase "no evidence" to mean "no admissible and discoverable

evidence" was not altogether unreasonable.

Whether Underwriters had a reasonable basis for contending that

the Parrish files were undiscoverable or inadmissible are additional

questions.  As discussed above, the Court has determined that the

Parrish documents were discoverable, but only after significant

analysis.  The Court cannot say that Underwriters' belief that the

Parrish documents were protected by the work product doctrine, and

thus were *undiscoverable evidence*, was so unreasonable as to

constitute misrepresentation.  Accordingly, the Court finds that the

crime-fraud exception to the work product doctrine is inapplicable,

and declines to impose sanctions on Underwriters.

--------

[4] Black's Law Dictionary provides the following four definitions
of evidence:

> 1.  Something (including testimony, documents, and tangible
> objects) that tends to prove or disprove the existence of an
> alleged fact . . . 2.  See *fact in evidence* [providing: A fact
> that *a tribunal considers* in reaching a conclusion; a fact that
> has been admitted into evidence in a trial or hearing]. . .3.
> The collective mass of things, esp. testimony and exhibits,
> *presented before a tribunal* in a given dispute. . . . 4.   The
> body of law regulating the *admissibility of what is offered as*
> *proof into the record* of a legal proceeding...

Black's Law Dictionary 595 (8th Ed. 2004) (emphases added).  The
Court finds that the latter three definitions might all reasonably be
interpreted to describe discoverable and /or admissible evidence.

AO 72A
(Rev.8/82)

**CONCLUSION**

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** Atlanta Gas Light Company's Renewed Motion to Compel [109] and **DENIES** Underwriters' Request for Guidance [132].  Underwriters should produce the following documents to AGLC within ten (10) days of the date of this Order:  UIC000366, UIC000622-23, UIC000624-25, UIC000644-45, UIC000647, UIC000649, and UIC000777.  Underwriters may redact any mental impressions from these documents before producing them to AGLC.

SO ORDERED, this ___ day of February, 2008.

JULIE E. CARNES
UNITED STATES DISTRICT JUDGE

25